06-2919-cr
United States v. Liriano-Blanco

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: September 5, 2007          Decided:  December 11, 2007)

Docket No. 06-2919-cr

-------------------------------------

UNITED STATES OF AMERICA,

Appellee,

- v -

ARIEL LIRIANO-BLANCO,

Defendant-Appellant.

-------------------------------------

Before:   WALKER, CALABRESI, and SACK, Circuit Judges.

Appeal by the defendant from a judgment of conviction and sentence in the United States District Court for the Northern District of New York (Thomas J. McAvoy, Judge).  Upon the defendant's plea of guilty pursuant to a plea agreement, which included an appeal waiver by the defendant, to unlawfully entering the United States in violation of 8 U.S.C. § 1326(a), (b)(2), the district judge declined to impose a non-Guidelines sentence because he thought that doing so was likely prohibited by law.  The court was, at the time of sentencing, under a misimpression as to the defendant's ability to appeal his sentence, which may have affected the severity of the sentence that the court imposed.

Remanded in order to give the district court the opportunity to reconsider the sentence.

CRAIG M. CRIST, Dreyer Boyajian LLP, Albany, NY, for Defendant-Appellant.

BRENDA K. SANNES, Assistant United States Attorney (Edward P. Grogan, Assistant United States Attorney, of counsel), for Glenn T. Suddaby, United States Attorney for the Northern District of New York, Syracuse, NY, for Appellee.

SACK, Circuit Judge:

On its face, this appeal raises the question of the authority of a district court to sentence a defendant below the range provided by the United States Sentencing Guidelines (the "Guidelines") when so-called "fast-track" downward departures are not available in the district. We cannot, however, reach the substance of this issue because, we conclude, the waiver of appeal included in the plea agreement of the defendant, Ariel Liriano-Blanco, is effective and bars us from doing so. Nevertheless, because the district court appears to have determined the sentence based, in part, on its misimpression, uncorrected by the government, that he could appeal his sentence to us, and because that misimpression may have affected the severity of the sentence that the court imposed, we remand to the district court to provide it with an opportunity to reconsider.

**BACKGROUND**

On December 16, 2005, Liriano-Blanco entered this country illegally by walking from Canada to the United States at

2

an unauthorized border crossing at or near Champlain, New York. His movements were detected by an intrusion device, which notified the United States Border Patrol. A member of the Border Patrol effected Liriano-Blanco's arrest.

On December 22, 2005, Liriano-Blanco was indicted in the United States District Court for the Northern District of New York on one count of unlawfully attempting to re-enter the United States after being previously removed from the country following his conviction of an aggravated felony, in violation of 8 U.S.C. § 1326(a), (b)(2). On February 6, 2006, Liriano-Blanco entered into a plea agreement with the government. In it, he agreed, inter alia, to plead guilty to various charges against him and to waive the right to appeal any sentence of sixty months or less.

On the same day, the district court (Thomas J. McAvoy, Judge) held a video-conference plea hearing.[1] During the plea colloquy, the court specifically addressed the appeal waiver contained in the plea agreement, asking whether Liriano-Blanco agreed to give up the right of appeal for any sentence of 60 months or less, whether he did so voluntarily, and whether he understood the waiver when he agreed to it. Liriano-Blanco answered "yes" to each of these questions. Tr. of Plea Hearing, Feb. 6, 2006, at 15-17. The court then accepted Liriano-Blanco's guilty plea.

---

[1] The district judge was in Binghamton, New York, while Liriano-Blanco and counsel for him and for the government were in Albany. Tr. of Plea Proceeding, Feb. 6, 2006.

The Fast-Track Program

Underlying the sentencing issues the district court then faced was the existence of the "early disposition," or "fast-track," federal sentencing program. The program has existed since 2003 when Congress "instructed the United States Sentencing Commission to issue a policy statement authorizing a downward departure pursuant to an early disposition program authorized by the Attorney General." United States v. Mejia, 461 F.3d 158, 160 (2d Cir. 2006) (citations and internal quotation marks omitted).

> As directed by Congress, the Sentencing Commission adopted U.S.S.G. § 5K3.1 . . . which provides that, "[u]pon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides.

Id. at 161 (emphasis added). At last count, the fast-track program was in force in thirteen of the ninety-four federal districts: Arizona; California (Central, Southern, Eastern, and Northern districts); Idaho; Nebraska; New Mexico; North Dakota; Oregon; Texas (Southern and Western districts); and the Western District of Washington. Id. The fast-track program is not in effect in the Northern District of New York.

Sentencing of Liriano-Blanco

The parties and the probation office made written submissions to the district court with regard to Liriano-Blanco's sentencing. The Probation Office calculated the Guidelines range

4

to be 57 to 71 months, based upon an offense level of 8, under U.S.S.G. § 2L1.2(a), a 16 level enhancement under § U.S.S.G. § 2L1.2(b)(1)(A)(I) based upon Liriano-Blanco's prior felony conviction, and a criminal history category of IV. Liriano-Blanco argued, however, that a non-Guidelines sentence was available and should be imposed "to avoid the disparity caused by the existence of fast-track programs in other districts." Def.'s Sentencing Mem., dated April 26, 2005 [sic], at Point II.A.

On May 8, 2006, some three months after Liriano-Blanco's plea hearing, the district court conducted a brief sentencing hearing. The court commented generally on non-Guidelines sentencing in the district courts in illegal-reentry cases. The court concluded:

> [I]nstead of sentencing you today, we're gonna look into those things, we're gonna examine the new case law, I'm gonna take under advisement the things I'm telling you about today and then, fairly quickly, hopefully within a couple weeks, we'll bring you back and I'll hear arguments and I'll sentence [you].

Tr. of Sentencing Hearing, May 8, 2006, at 6. The court made no mention of the possibility of an appeal or of the appeal waiver that was in force.

The sentencing hearing was reconvened on June 13, 2006. At the outset, the district court said:

> No matter which way I go in this case, . . . I am gonna offer the other side a certificate of appealability, so I will immediately sign

it. . . .[2]  I would like to see what the Second Circuit says about it.  I know what other courts and other Circuits say, but I would like guidance from a non-Fast Track circuit.

Tr. of Sentencing Hearing, June 13, 2006, at 9.

The court then entertained argument from both sides. Most of the discussion was about the disparity between the Guidelines sentence for Liriano-Blanco and the lower Guidelines sentence that would have been available to him had he crossed the border into one of the fast-track jurisdictions instead of the Northern District of New York.

Toward the end of the proceeding, the court expanded on its introductory remarks about sentencing disparities and the fast-track program.

Now, if I thought I could follow my own individual predilections, if I could follow my emotions and my heart, I would go down four levels and say I'm gonna sentence him there.  But I don't think I can do that. . . .  That's what I did [when I sat by designation] in Laredo, [Texas,] on two separate occasions, and in Midland, [Texas,] because they have the Fast Track Program.

Here, we don't have it.  It does cause disparity, but I think it is important that Congress did incorporate that into The [PROTECT] Act, and I think the First Circuit made that call and was persuaded by that

_____

    2  We are not quite certain what the district court meant by "a certificate of appealability."  Ordinarily, we use the term to refer to the certificate granted by a district court, circuit judge, or a justice that permits a person whose petition or application for habeas corpus relief has been denied by the district court to appeal it to the court of appeals.  See, e.g., 28 U.S.C. § 2253(c); Lozada v. United States, 107 F.3d 1011, 1015-16 (2d Cir. 1997), abrogated on other grounds by United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997).

6

precedent.  I am persuaded by the way they arrived at that.

Id. at 22-23.  The district court then found Liriano-Blanco's offense level to be 21, and granted a departure from the recommended criminal history level of IV to a category III.  The court calculated the resulting range to be 46 to 57 months and sentenced Liriano-Blanco to a term of 46 months.

Shortly thereafter, the district court returned to the issue of a possible appeal.  "Hopefully, maybe, the Second Circuit may disagree with me and be able to give a lesser sentence when they send it back, but I don't know."  Id. at 26-27.  "Both you [referring to Liriano-Blanco] and the Government have the right to appeal this sentence under certain circumstances.  And the Court has already indicated it would issue, if applied for, a certificate of appealability."  Id. at 28.  The court told Liriano-Blanco, finally, that he was required "to file any appeal [he] . . . plan[ned] to take within 10 days of the date of th[e] sentence."  Id.

In fact, of course, Liriano-Blanco had consented to an appeal waiver as part of his plea agreement.  No one present corrected the district court's misimpression, despite the fact that the court referred to its expectation of an appeal repeatedly, and the possibility of an appeal appeared to be an integral part of the judge's reasoning in arriving at a sentencing decision.

Liriano-Blanco's Appeal

7

On June 20, 2006, Liriano-Blanco filed a notice of appeal. On October 6, 2006, after his efforts to consolidate the appeal with that of one José Duran-Ferreira -- who had traveled into the United States, and was arrested, with Liriano-Blanco -- had failed, he filed his brief.

In the interim, on August 22, 2006, we decided <u>Mejia</u>. We concluded: "We join other circuits in holding that a district court's refusal to adjust a sentence to compensate for the absence of a fast-track program does not make a sentence unreasonable." <u>Mejia</u>, 461 F.3d at 164. We did not have before us in <u>Mejia</u>, and did not address, the question presented in Liriano-Blanco's case: whether the district court has the authority to impose a non-Guidelines sentence in response to the fast-track sentencing disparity if it deems such a reduced sentence to be warranted.

On October 13, 2006, the government moved to dismiss Liriano-Blanco's appeal on the ground that he had waived his right to appeal in the plea agreement. On December 22, 2006, a panel of this Court denied the motion. Our order reads:

> The Government moves to dismiss defendant-
> appellant's case on the ground that Liriano-
> Blanco entered into a clear and enforceable
> appellate waiver, and that he knowingly and
> voluntarily acknowledged his waiver of his
> right to appeal. Upon due consideration, the
> Government's motion is DENIED. Liriano-
> Blanco argues that the district court's
> comments during sentencing regarding the
> availability of appeal amounted to a de facto
> striking and/or rejection of the appeal
> waiver as contained in the plea agreement.

> We have not addressed precisely this issue.
> Cf. United States v. Fisher, 232 F.3d 301,
> 304 (2d Cir. 2000).

United States v. Liriano-Blanco, 2d Cir., No. 06-2919-cr, Order dated Dec. 22, 2006.[3]

**DISCUSSION**

We note at the outset that if Liriano-Blanco were able to lodge an appeal challenging the district court's perception of its power to issue downward departures without fast-track authorization, such an appeal would not be frivolous. Although we concluded in United States v. Mejia that a sentencing court is not required to account for the fast-track disparity by imposing a non-Guidelines sentence, Mejia, 461 F.3d at 164, we did not foreclose the possibility that a court has the legal authority to impose, in its discretion, a non-Guidelines sentence on that basis. Perhaps it does not, under an extension of the Mejia rationale or otherwise, see, e.g., United States v. Castillo, 460 F.3d 337, 361 (2d Cir. 2006) (district court may not impose a non-Guidelines sentence "based on policy disagreements with [a] disparity that the Guidelines" call for). But the answer to that question is not a foregone conclusion. The issue for us now, therefore, is whether we can reach this question despite the

---

[3] Meanwhile, this Court ordered counsel for Duran-Ferreira to respond to the government's similar motion to dismiss Duran-Ferreira's appeal. Our order in Liriano-Blanco was not brought to the attention of the panel to which the motion was assigned. The motion to dismiss was granted by another panel on February, 16, 2007. United States v. Duran-Ferreira, 2d Cir., No. 06-3003-cr, Order dated Feb. 16, 2007.

9

appeal waiver to which Liriano-Blanco consented as part of his plea agreement.

"Plea agreements that include a waiver of a defendant's right to appeal his conviction and sentence are a relatively recent phenomenon. This Court has repeatedly upheld the validity of such waivers, with the obvious caveat that such waivers must always be knowingly, voluntarily, and competently provided by the defendant." United States v. Gomez-Perez, 215 F.3d 315, 318 (2d Cir. 2000) (citing cases). We have assumed that we have the power to examine the circumstances surrounding the plea agreement to assure ourselves that these conditions are met. See id.

Liriano-Blanco does not dispute, however, that he entered his plea agreement knowingly, voluntarily, and competently. What he does challenge is the validity of that agreement in light of the district court's stated assumption that he did have a right to appeal.

Under Federal Rule of Criminal Procedure 32(j)(1)(B), "[a]fter sentencing--regardless of the defendant's plea--the court must advise the defendant of any right to appeal the sentence." But "'Congress seems to have understood'" -- indeed it is difficult to believe it did not understand -- "'that advice as to a right to appeal a sentence need be given only when such a right exists. [And a] right might not exist either because it was never created in the first place, or because it was created and then waived.'" United States v. Fisher, 232 F.3d 301, 303 (2d Cir. 2000) (quoting United States v. Tang, 214 F.3d 365, 369

10

(2d Cir. 2000)). Indeed, Tang urged sentencing judges "not to give 'unqualified advice concerning a right to appeal'" in "cases where a waiver of appellate rights is of the type we have ruled enforceable and [said wavier] has been fully explained to the defendant at the time of the plea." Id. at 303 (quoting Tang, 214 F.3d at 370).

It is, nonetheless, not uncommon for a district judge to notify a defendant at sentencing of his or her right to appeal, momentarily unaware that that right has been waived. This may result from Rule 32(j)(1)(B)'s requirement of notice coupled with the fact that the waiver of appeal contained in a plea agreement may be of little or no relevance to the sentencing proceeding. And the time that usually elapses between a plea hearing and sentencing -- in this case, more than three months -- makes such an error all the more likely. Cf. id. at 302 (observing that "[s]ome four months" elapsed between the district court's taking of the guilty plea, at which it discussed the appeal waiver, and the sentencing hearing, at which it mistakenly advised the defendant of his right to appeal).

As a general matter, however, "a district judge's post-sentencing advice suggesting, or even stating, that the defendant may appeal" does not "render[] ineffective" an "otherwise enforceable waiver of appellate rights." Id. at 304 (concurring with the conclusion of the Fifth, Seventh, Eighth, and Tenth Circuits). "If enforceable when entered, the waiver does not lose its effectiveness because the district judge gives

11

the defendant post-sentence advice inconsistent with the waiver." Id. at 304-05 (footnote omitted). In Fisher, as in this case, "[n]o justifiable reliance has been placed [by the defendant] on such advice." Id. at 305.

Liriano-Blanco's appeal waiver is therefore effective to bar his appeal of the district court's conclusion that a non-Guidelines sentence is unavailable despite the "fast track" disparity.

That is not the end of the matter, however. Our concern regarding mistaken statements by a sentencing judge about the defendant's right to appeal has typically focused on the possibility that such bad advice may "'precipitate some needless appeals,'" id. at 303 (quoting Tang, 214 F.3d at 370). Perhaps there has been concern, too, about false expectations of the possibility of appeal engendered in those who are being sentenced. In this case, however, there is more at stake than unnecessary proceedings and false hope. The mistake as to Liriano-Blanco's right to appeal may have directly affected the length of the sentence imposed on him. The court explicitly expressed its view that a more lenient sentence might be appropriate but that it harbored doubts about whether under the applicable law it could impose that sentence. The court then chose to not depart from the Guidelines and imposed a sentence of 46 months. The district court relied on the possibility of appeal in choosing the higher sentence, apparently unaware that Liriano-Blanco had waived the ability to pursue such an appeal.

12

Heightening our concern in Liriano-Blanco's case is the fact that, notwithstanding his awareness of this reliance, the Assistant United States Attorney who appeared at Liriano-Blanco's sentencing did nothing to disabuse the district court of its misapprehension that an appeal by Liriano-Blanco remained possible.  In at least two of the cases in which we have discussed the obligation of district courts to advise defendants of their right to appeal, we have noted the prosecutors' obligations at sentencing under a plea agreement containing an appeal waiver.  As we said in Fisher:

> We will continue to expect prosecutors to alert district judges at sentencing to the existence of appellate waivers, see Tang, 214 F.3d at 370, both to provide an opportunity to clarify any ambiguity as to the scope of such waivers, and to afford district judges an opportunity to fashion any advice concerning possible appellate rights in light of the terms of the waiver.

Fisher, 232 F.3d at 305.  Our cases have not imposed the same duty on defense counsel, and we have never suggested that the silent presence of defense counsel excuses the government's counsel's failure to speak up under these circumstances.[4]

_____

[4]  That may reflect "the special role played by the American prosecutor . . . ." Strickler v. Greene, 527 U.S. 263, 281 (1999) ("[T]he United States Attorney is 'the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.'" (quoting Berger v. United States, 295 U.S. 78, 88 (1935))).  It may also be deemed preferable not to require defense counsel, who may one day challenge an appeal waiver, to acknowledge the waiver's effect in open court, but instead place responsibility for acknowledging the existence of

13

Plea agreements are generally treated as contracts. Matters outside of the bargain between the parties are not covered. In past cases we have thus held that despite a plea agreement, a sentencing decision could be reviewed on appeal if it was reached in a manner that the plea agreement did not anticipate. In United States v. Yemitan, 70 F.3d 746 (2d Cir. 1995), for example, we held that "a sentence tainted by racial bias could not be supported on contract principles, since neither party can be deemed to have accepted such a risk or be entitled to such a result as a benefit of the bargain." Id. at 748. Along these lines, we think, Liriano-Blanco cannot be "deemed to have accepted [the] risk" that the judge sentencing him would do so based on the judge's mistaken impression that his sentencing decision could be appealed. Although we cannot decide Liriano-Blanco's appeal on the merits, then, we conclude that the waiver does not explicitly or implicitly bar us from returning this matter to the district court, so that, having been made aware that Lirirano-Blanco cannot appeal its decision, it might resentence him if it sees fit to do so.

We do not know what the district court might have done had it been corrected at the time of sentencing as to its mistaken view that Liriano-Blanco was entitled to appeal the decision of law upon which the court based the sentence. While we will not suggest in advance our views on a matter not before

an appeal waiver on the party that intends to enforce it.

14

us, we do note, as we did at oral argument, the possibility that if the court had departed from the Guidelines range and imposed a sentence below 46 months, and left it to the government, not Liriano-Blanco, to appeal, that could have been a means for the district court to obtain this Court's decision on the unsettled issue which the district court found not only troubling, but perhaps determinative. We cannot be sure.

Rather than guess as to what the district court would have done had it been informed of the appeal waiver, we remand the case to the district court for it to reconsider what further steps, if any, it thinks warranted in light of Liriano-Blanco's inability to appeal from the court's ruling.

**CONCLUSION**

For the reasons stated above, the district court's sentence is reversed and the case remanded for further consideration of the matter in accordance with this opinion.

15