06-5118-cr
USA v. Hendry

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

—————

August Term, 2007

(Argued: April 2, 2008                                          Decided: April 9, 2008)

Docket No. 06-5118-cr

————————————————

UNITED STATES OF AMERICA,

*Appellee*,

— v. —

JOSE BELETE HENDRY, also known as Henry Belete, also known as Jose Belete Henry, also known as Jose Henry,

*Defendant-Appellant*.

————————————————

Before: LEVAL, CALABRESI, and WESLEY, *Circuit Judges*.

Appellant asserts that the district court erred in determining that the existence of fast-track sentencing programs in some districts but not others neither created an unwarranted sentencing disparity nor violated the parsimony clause of 18 U.S.C. § 3553(a). Appellant also asserts that the district court gave too much weight to the Sentencing Guidelines and too little to other § 3553(a) factors. The judgment of the district court is AFFIRMED.

> KATHERINE POLK FAILLA, Assistant United States
> Attorney, *for* Michael J. Garcia, United States Attorney for
> the Southern District of New York (Joseph P. Facciponti, *of*
> *counsel*), New York, N.Y., *for Appellee.*

-1-

YUANCHUNG LEE, Federal Defenders of New York, Inc. Appeals Bureau, New York, N.Y., *for Defendant-Appellant*.

PER CURIAM:

Appellant is a citizen of the Dominican Republic who was convicted in 1998 of both state and federal drug offenses.  As a result, he was deported to the Dominican Republic in 2000.  He asserts that, because he had testified against his coconspirators in the 1998 cases, and because his coconspirators returned to the Dominican Republic upon their release from incarceration, they began to threaten Appellant in Santiago.  Allegedly fearing for his life, Appellant returned to the United States in 2004.

In 2006, he was arrested in Manhattan by agents of the Bureau of Immigration and Customs Enforcement and charged with entering the United States after having been lawfully deported following a conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2).  He pled guilty and cooperated with the prosecution.  The Presentence Report ("PSR") prepared by the Probation Department calculated a base offense level of eight, pursuant to U.S.S.G. § 2L1.2(a).  This was enhanced by sixteen levels because he was deported after a conviction for a drug trafficking offense for which the sentence imposed exceeded thirteen months.  U.S.S.G. § 2L1.2(b)(1)(A)(i).  Three levels were subtracted for acceptance of responsibility, U.S.S.G. § 3E1.1(a), (b), for a total offense level of twenty-one.  The PSR also determined that Appellant had six criminal history points—three each for his state and federal convictions arising out of the 1998 drug charges—which put him in Criminal History Category

III. The result was a calculated Guidelines range of forty-six to fifty-seven months. Although the PSR was never revised, the parties later agreed that, because the instant offense was committed while Appellant was still under supervision from his previous federal offense, two additional criminal history points should be added under U.S.S.G. § 4A1.1(d). The consequence was to push Appellant into Criminal History Category IV, which yielded a Guidelines range of fifty-seven to seventy-one months.

Appellant requested a sentence below the Guidelines range based on the following considerations: (1) Appellant's cooperation with the Government, (2) the circumstances prompting his return to the United States, (3) the fact that the Guidelines range was substantially increased because of a single prior instance of illegal conduct (the drug conspiracy), and (4) the unwarranted sentencing disparities caused by the existence of fast-track programs[1] in some districts but not in others.

At sentencing, Judge Marrero stated that, since *United States v. Booker*, 543 U.S. 220 (2005), "[a]lthough no longer bound by the mandatory constraints of the sentencing guidelines, the court must consult those guidelines and take them into account when sentencing." The court noted that it "has weighed [the PSR's findings of fact] along with the factors listed in [§ 3553(a)] in coming to its final sentencing decision in this case." The court found that, in light of *United States v. Mejia*, 461 F.3d 158 (2d Cir. 2006), Appellant's arguments with regard to the fast-track

---

[1] Fast-track programs allow defendants charged with illegal reentry under 8 U.S.C. § 1326 to plead guilty and waive certain rights, including the rights to file pretrial motions and to appeal or collaterally attack their sentences, in exchange for a lower sentence. *See United States v. Mejia*, 461 F.3d 158, 160-61 (2d Cir. 2006). None of the districts in the Second Circuit have fast-track programs.

program were unpersuasive. The court believed that Appellant's personal "circumstances warrant some consideration by the court under [§ 3553(a)], although the court is not persuaded that they would warrant the drastic departure from the guidelines that the defense has suggested overall." Accordingly, the court sentenced Appellant to fifty months' imprisonment, seven months below the bottom of the Guidelines range.

On this appeal, Appellant renews his objection to the disparity created by fast-track programs, arguing that it not only creates unwarranted disparities, but also violates the parsimony provision of 18 U.S.C. § 3553(a). Appellant also asserts that the sentencing court placed too much weight on the Guidelines, to the exclusion of other § 3553(a) factors.

In *Mejia*, we held that sentencing disparities created by the fact that some, but not all, districts use fast-track programs did not render the sentences in non-fast-track districts necessarily unreasonable. 461 F.3d at 164. In *United States v. Liriano-Blanco*, 510 F.3d 168, 172 (2d Cir. 2007), we noted that the question of "whether the district court has the authority to impose a non-Guidelines sentence in response to the fast-track sentencing disparity if it deems such a reduced sentence to be warranted" was still an open one. That is, *Mejia* held only that we would not find a sentence unreasonable for failing to compensate for such disparities; it said nothing as to whether a district judge *could* take such disparities into account. Appellant asserts that the district court assumed that it was unable to compensate for disparities created by fast-track programs, and therefore he asserts that this case presents the question left open in *Mejia* and *Liriano-Blanco*.

We think that this is an incorrect reading of the district court's decision. At sentencing, Judge Marrero said that *Mejia* held that "a district court's refusal to adjust a sentence to compensate for the absence of fast track programs does not create or make a sentence unreasonable." He read *Mejia* as holding that "no sentencing principle requires a sentencing court to mimic the fast track transaction or compensate for its unavailability. In light of *Mejia*, the court . . . does not find the . . . fast track arguments [made] by defendant to be persuasive reasons to impose a nonguideline sentence." Our own reading of *Mejia* confirms the district court's understanding of that case—the absence of a fast-track program does not *require* the court to adjust the sentence. We believe that the district court thought it could consider the absence of such a program in determining its sentence. Notably, Judge Marrero said that he did not find the fast-track arguments "to be persuasive"—he did *not* say that they were foreclosed by *Mejia*. As a result, the sentencing decision here was an exercise of the judge's discretion not to depart on the grounds of a disparity created by the absence of a fast-track program.

Appellant also makes the novel argument that fast-track programs in other jurisdictions require a lower sentence in non-fast-track jurisdictions under § 3553(a)'s parsimony clause. Appellant asserts that the fact that other courts give lower sentences demonstrates that lower sentences suffice to meet the aims enumerated in § 3553(a). This argument, too, is foreclosed by *Mejia*. We there held that defendants in fast-track districts were not similarly situated to those in non-fast-track districts. 461 F.3d at 162 (rejecting the "false equivalence between (on the one hand) defendants in fast-track jurisdictions who receive a benefit in exchange for the acceptance of certain detriments, and (on the other hand) a defendant . . . who claims the benefit without

suffering the detriment").  That holding explains in part why the sentencing disparities resulting from the existence of fast-track districts are not *per se* unwarranted, and it also explains why sentences in fast-track districts cannot be compared with sentences in non-fast-track districts in order to demonstrate that the latter are longer than necessary.  Under *Mejia*, the two are not directly comparable.

Finally, Appellant argues that two statements made by the court during sentencing demonstrate that it placed too much weight on the Guidelines and too little on the other § 3553(a) factors.  First, during the plea proceeding, Judge Marrero told Appellant that he could not be certain what his sentence would be until he had reviewed the PSR and "determined whether there are appropriate grounds to vary from the guidelines range."  And second, during sentencing, the court said that it did not think that Appellant's personal circumstances "would warrant the drastic departure from the guidelines that the defense has suggested overall."  We read these statements as nothing more than a proper reminder that the Guidelines serve as "a benchmark or a point of reference or departure for the review of sentences."  *United States v. Rattoballi*, 452 F.3d 127, 133 (2d Cir. 2006) (internal quotation marks and citation omitted); *see also Rita v. United States*, 127 S. Ct. 2456, 2465 (2007) ("The sentencing judge, as a matter of process, will normally begin by considering the presentence report and its interpretation of the Guidelines.").

Accordingly, the judgment of the district court is AFFIRMED.