**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-2887
_____

UNITED STATES OF AMERICA

v.

DEXTRICK LAWTON,
                                        Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal Action No. 2-12-cr-00295-001)
District Judge: Honorable Gustave Diamond

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 8, 2015

Before: VANASKIE, NYGAARD, and RENDELL, *Circuit Judges*

(Opinion Filed:  January 11, 2016)
_____

OPINION*
_____

VANASKIE, *Circuit Judge.*

Appellant Dextrick Lawton entered a negotiated plea of guilty to conspiracy to

distribute and possess with intent to distribute one kilogram or more of heroin in violation

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

of 21 U.S.C. § 846, and signed a waiver of appellate rights in connection with his plea. Before sentencing, he sought to withdraw his plea on the ground that it was not knowing, intelligent, and voluntary. The District Court denied Lawton's motion and imposed the agreed-upon sentence of 180 months (15 years) of incarceration and 5 years of supervised release. After Lawton appealed, the Government moved to enforce the appellate waiver. For the reasons that follow, we will enforce the waiver and dismiss the appeal.

I.

In November 2012, Lawton and three codefendants were indicted by a federal grand jury for conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. § 846. The parties began plea negotiations not long after indictment. The Government contended that Lawton would face an enhanced offense level for being a supervisor or manager, but would receive a reduction for acceptance of responsibility, resulting in an adjusted offense level of 32. Prior state-court convictions for drugs and firearms led to a criminal history category of III. This resulted in an advisory guidelines range of 151 to 188 months.

During plea negotiations, the Government suggested that Lawton faced two additional increases to any potential sentence. First, Lawton had a prior felony conviction for possession of a controlled substance, which, upon filing of an information by the Government, would have doubled Lawton's mandatory minimum sentence from 10 to 20 years under 21 U.S.C. § 851. Second, the Government contended that on one occasion, Lawton delivered heroin by way of an associate to a user named Brian Smith,

2

who ultimately died from a combination of overdose and choking on food. The combination of Lawton's prior felony narcotics conviction and delivery of heroin that resulted in death would have resulted in mandatory life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A)(i). As part of a negotiated plea, the Government agreed to forego these enhancements and recommend a sentence of 15 years' imprisonment.

On October 15, 2013, Lawton filed a pro se motion for the replacement of his court-appointed counsel, Michael Moser. On October 22, the District Court conducted a hearing and accepted Lawton's representation that they were not "see[ing] eye to eye," App. 78. In response to Lawton's motion, however, the Government said that it would construe Moser's dismissal as a rejection of the pending plea offer, which might lead to the filing of an information under § 851 and a superseding indictment adding charges relating to Smith's death. Over Lawton's objection, the Court agreed that the Government retained the right to withdraw a plea offer at any time. Lawton then conferred privately with counsel, after which he agreed to accept the plea offer and withdraw his motion to dismiss Moser.

Six weeks later, on December 4, Lawton, still represented by Moser, pleaded guilty under Fed. R. Crim. P. 11(c)(1)(C) in exchange for the negotiated sentence of 15 years' imprisonment. As part of the plea colloquy, both Lawton and Moser affirmatively agreed that Lawton's plea of guilty was knowing, intelligent, and voluntary. He also agreed orally and in writing to a limited waiver of his appellate rights, which permitted him to appeal only if (1) the Government appealed; (2) the sentence exceeded the

3

applicable statutory limits; or (3) the sentence unreasonably exceeded the advisory Guidelines range.

This appeal turns largely on instances during the plea colloquy when Lawton raised questions with respect to the substance of the Government's evidence against him. First, Lawton put the following inquiry to the Court:

> THE DEFENDANT: [A]s far as the evidence, is there, like, something else, like a package I was supposed to get?
>
> THE COURT: I'm sorry?
>
> THE DEFENDANT: Is there, like, a package I'm supposed to have with the evidence?
>
> THE COURT: No, there was no package you were supposed to have. There was certain evidence that the Government was required to produce for your lawyer at some earlier time. I presume that that's been done under the Rule 12 rules. But the Government doesn't have to produce all of its evidence in advance of trial.
>
> THE DEFENDANT: I understand that.

App. 98–99. Moments later, the following exchange occurred:

> THE COURT: You received a copy of the indictment in this case, and you have had an opportunity—
>
> THE DEFENDANT: No.
>
> THE COURT: You have not received a copy of the indictment in this case?
>
> THE DEFENDANT: No. I never had. The only thing I ever had between myself and my lawyer is pretty much explaining what a conspiracy is. I never had any paperwork or any—
>
> THE COURT: You have had an opportunity to discuss the charges that are against you with your lawyer?

4

THE DEFENDANT: Yes.

THE COURT: So that you know that what you're charged with in this case is from September 2010 to on or about January 2012, that you conspired with certain other individuals named and others both known and unknown to the Grand Jury to distribute and possess with the intent to distribute one kilogram or more of a mixture and substance containing a detectable amount of heroin. Do you understand that's what you're charged with in this case?

THE DEFENDANT: Yes, sir.

App. 100–01.

Shortly thereafter, the Government explained that, at trial, the proof would demonstrate that Lawton served as a co-conspirator in a large-scale drug ring in which "Lawton's role was to distribute heroin to the hotel rooms, to collect money from the sold heroin, and to otherwise assist the heroin distribution operations." App. 111. The Government added that it intended to present "evidence of a number of controlled purchases of heroin during the course of the conspiracy, along with other seizures of heroin[,] . . . laboratory analysis confirming that the substances seized and obtained were in fact heroin[,] . . . [and] witness testimony confirming Lawton's role in the conspiracy." *Id*. This led to the following exchange:

THE COURT: You heard the Government's summary of the evidence in the case as it pertains to you. Is that accurate?

THE DEFENDANT: As far as my role, no. I was never presented with none of that. What she just said I never heard that before.

5

THE COURT: You don't have to hear that before. This is the Government's statement as to what they will be able to prove in the case as it pertains to you. Is that an accurate statement?

THE DEFENDANT: Yes.

THE COURT: Anything else in that regard?

MR. MOSER: Nothing, Your Honor.

THE COURT: Still your desire to plead guilty?

THE DEFENDANT: Yes, sir.

App. 111–12. Neither Lawton nor Moser raised any further objection during the plea colloquy that day.

On December 13, 2014, still prior to sentencing, Moser moved to withdraw as counsel because "[w]hen the change of plea happened . . . with respect to the factual recitation, Mr. Lawton was in distress. There may be a question as to whether or not I should have shut that down . . . ." App. 117. But because Moser could not assist in the filing of a motion predicated in part on his own ineffectiveness, he was obliged to withdraw. The Court granted the motion, after which Lawton, with the assistance of new counsel, moved to withdraw his plea under Rule 11 of the Federal Rules of Criminal Procedure.[1] The Court denied the motion without a hearing.

On May 21, 2014, at sentencing, Lawton reiterated his desire to withdraw his guilty plea. He informed the Court that he had misunderstood the plea process, that he

---

[1] Rule 11 provides that a defendant may withdraw a guilty plea before imposition of sentence if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).

never received discovery, that he had tried to ask the Court questions about the process but was rebuffed, that he never oversaw the distribution of drugs or sold drugs, and that Moser had misinformed him by telling him he could face life imprisonment in the absence of a plea. The District Court declined to revisit its ruling on the motion to withdraw, and sentenced Lawton to the agreed-upon term of 15 years' imprisonment and 5 years of supervised release.

After pronouncing the sentence, the Court heard from Lawton's mother. In response to her plea for leniency, the Court informed her as follows:

> Now, he has a certain right to appeal. If I was wrong in refusing to permit him to withdraw his plea, it will come back, but I'm not sure that it will come back to his benefit because unless the government loses all of the witnesses that it has, the chances are that he will still be convicted after a trial, but that's pure speculation on my part. You understand he does have a limited right to appeal and he can appeal my ruling with regard to his motion to withdraw a sentence and plea.

App. 139. Lawton filed a timely appeal.

## II.

The District Court had jurisdiction over this case under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## III.

The Government argues that we should enforce the waiver of appeal and dismiss this matter for lack of jurisdiction. In assessing whether to enforce a waiver of appeal, we must consider: (1) the scope of the waiver and whether it bars appellate review of the

7

issue presented by the defendant; (2) whether the waiver was knowing, intelligent, and voluntary; and (3) whether enforcing the waiver works a miscarriage of justice. *United States v. Jackson*, 523 F.3d 234, 243–44 (3d Cir. 2008).

## A.

Lawton first argues that this appeal falls outside the scope of the waiver because of the District Court's comments to Lawton's mother after announcing sentence—namely, its unsolicited remark that Lawton "does have a limited right to appeal and he can appeal my ruling with regard to his motion to withdraw a sentence and plea." App. 139. To be sure, these remarks were at odds with the text of the earlier waiver, but they are not controlling. The question is what the defendant understood at the time of the plea colloquy. *See United States v. Corso*, 549 F.3d 921, 930 n.2 (3d Cir. 2008). Statements by a district court at sentencing, even if contrary to an earlier waiver of appeal, do not affect the waiver's scope because "'no justifiable reliance has been placed by the defendant on such advice.'" *Id.* (quoting *United States v. Liriano-Blanco*, 510 F.3d 168, 173 (2d Cir. 2007)). Here, Lawton agreed to a waiver of appeal at the time of his plea, and the District Court's subsequent remarks to the contrary had no effect on the validity or scope of that waiver. Because this appeal does not implicate any of the three aforementioned exceptions contained in the waiver, we conclude that the appeal falls within the waiver's scope.

## B.

8

Next, Lawton submits that his waiver of appellate rights was not knowing, intelligent, and voluntary. We analyze that claim by "scrutiniz[ing] the colloquy" to determine whether "the district court 'inform[ed] the defendant of, and determine[d] that the defendant underst[ood] . . . the terms'" of the waiver. *United States v. Mabry*, 536 F.3d 231, 238-39 (3d Cir. 2008) (quoting Fed. R. Crim. P. 11(b)(1)(N)). We have uniformly upheld the validity of appellate waivers where the district court engaged in an appropriate plea colloquy under Rule 11. *See id.*; *United States v. Gwinnett*, 483 F.3d 200, 204–05 (3d Cir. 2007); *United States v. Schweitzer*, 454 F.3d 197, 203 (3d Cir. 2006); *United States v. Khattak*, 273 F.3d 557, 560 (3d Cir. 2001).

Here, Lawton affirmed that he was of sound mind at the time of the plea, that he was satisfied with Moser's performance as his attorney, and that he was pleading guilty knowingly and voluntarily. It is true, as we detailed above, that he at times asked questions and expressed dissatisfaction with the Government's production of discovery and its expected proof at trial. Nonetheless, after each such instance, he accepted the District Court's accurate explanation of his rights and reaffirmed his continuing desire to plead guilty. This is unsurprising, given that Lawton's objection to the recited facts appears to have been limited to the specific allegation that he participated in the distribution of heroin from hotel rooms. As he acknowledged by his plea of guilty, and as he further clarified in his briefing, *see* Lawton's Br. at 38, he did not object to the Government's contention that he committed the charged crime, that is, conspiracy to distribute heroin. As to the appellate waiver in particular, the Court engaged in a lengthy

9

inquiry during which Lawton expressed no confusion and asked no questions. As such, the transcript on its face would not permit a finding that the plea as a whole, or the waiver in particular, was unknowing or involuntary.

In response, Lawton offers a written statement from Moser, which comes in the form of a letter to Lawton's current attorney written some four months after the change of plea. Moser states that during the plea hearing, Lawton became distressed during the Government's factual recitation, such that Moser pulled Lawton aside and conducted a lengthy off-the-record conversation with him. Moser now in hindsight surmises that Lawton "may have been too upset and agitated to continue to proceed with a knowing, intelligent, and voluntary change of his plea to guilty." App. 47.

Moser's account is belied by the official transcript of the proceedings, which does not reflect an interruption in the proceedings at the time Moser describes. Nor does the record contain any other noteworthy expression of consternation or worry on Lawton's part. Instead the transcript reflects that the District Court "inform[ed] the defendant of, and determine[d] that the defendant underst[ood] . . . the terms'" of the waiver. *Mabry*, 536 F.3d at 239 (quoting Fed. R. Crim. P. 11(b)(1)(N)). Under these circumstances, we see no basis on which to decline enforcement of the waiver.[2]

---

[2] Lawton also suggests that the plea was rendered involuntary based on unduly coercive plea-bargaining tactics by the Government, including its position that the offer would be withdrawn if Lawton pursued his motion for new counsel. Lawton offers no legal support for this novel theory, and we agree with the District Court that in the absence of a promise to hold the offer open for a fixed period, the Government was free to withdraw its plea offer at any time.

As an alternative ground, Lawton argues that his plea was involuntary because Moser was ineffective during plea negotiations. *See United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992) ("[A] defendant has the right to make a reasonably informed decision whether to accept a plea offer."). Here, Moser presented Lawton with a choice between a negotiated 15-year sentence and the possibility of life imprisonment after trial. Lawton now believes that the Government's threat of an enhanced penalty under 21 U.S.C. § 851, though legally justified by Lawton's criminal history, was contrary to Department of Justice policy. He also contends that under *Burrage v. United States*, 134 S. Ct. 881 (2014), the Government would not have been entitled to a sentencing enhancement under § 841(b)(1)(A)(i). He believes that Moser erred in failing to identify these issues and bring them to his attention. Our longstanding practice, however, is "to defer the issue of ineffectiveness of trial counsel to a collateral attack." *United States v. Thornton*, 327 F.3d 268, 271 (3d Cir. 2003). We will follow that policy here, where the applicability of § 841(b)(1)(A)(i), the extent of Moser's advice on its applicability, and the question of prejudice may turn on factual questions that are inappropriate for resolution at this juncture.

## C.

Finally, Lawton argues that enforcement of his appellate waiver would work a miscarriage of justice by preventing review of his claim of actual innocence. Where a defendant seeks to withdraw a plea under Rule 11 based on actual innocence, the defendant's burden is "substantial," because "[b]ald assertions of innocence" are

11

insufficient, and must be "'buttressed by facts in the record that support a claimed defense.'" *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003) (quoting *United States v. Brown*, 250 F.3d 811, 818 (3d Cir. 2001)).

Lawton, by his own admission, "has not asserted innocence of conspiracy to deliver heroin altogether." Lawton's Br. at 38. And indeed, he would be hard-pressed to support such a claim—the Government's case was based on months of surveillance, controlled buys, cooperating witnesses, and recorded calls. Instead, Lawton's assertion of innocence is limited to the claim that he did not participate in a scheme to distribute heroin from hotel rooms, and had no role in Brian Smith's death. Because Lawton's limited disagreement with the scope of his participation in the conspiracy falls well short of a claim of actual innocence of the crime to which he pleaded guilty, Lawton has failed to establish that enforcement of the waiver would work a miscarriage of justice.

IV.

For the foregoing reasons, we will enforce the waiver of appeal and dismiss the appeal.