

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-16-2008

# USA v. Goodson

Precedential or Non-Precedential: Precedential

Docket No. 06-4895

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Goodson" (2008). *2008 Decisions.* Paper 282.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/282

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case Nos: 06-4895, 06-4896

UNITED STATES OF AMERICA

v.

DANIEL J. GOODSON, III

Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court Nos. 05-CR-179, 06-CR-231
District Judge: The Honorable Donetta W. Ambrose

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 1, 2008

Before: RENDELL, SMITH, and FISHER, *Circuit Judges*

(Filed: October 16, 2008)

Karen S. Gerlach
Renee Pietropaolo
Office of Federal Public Defender
1001 Liberty Avenue
1450 Liberty Center
Pittsburgh, PA 15222
*Counsel for Appellant*

Robert L. Eberhardt
Laura S. Irwin
Office of United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA  15219
*Counsel for Appellee*

---

OPINION

---

SMITH, *Circuit Judge*.

Daniel J. Goodson appeals from the sentence imposed by the United States District Court for the Western District of Pennsylvania, challenging a condition of supervised release requiring Goodson to consent to a search of his place of business.  The government asserts that we are precluded from reviewing this issue because Goodson, pursuant to a plea agreement, waived his right to file a direct appeal under 18 U.S.C. § 3742(a).  In his reply brief, Goodson acknowledges for

2

the first time the existence of an appellate waiver. He contends, however, that the waiver does not preclude this particular appeal and that, in any event, the waiver is invalid because it was unknowing and involuntary.

We must determine whether Goodson's failure to address the applicability of the appellate waiver in his opening brief effectively foreclosed him from subsequently challenging in his reply brief the enforceability of the appellate waiver. We hold that it does not. Nonetheless, we will enforce the appellate waiver and will affirm the judgment of the District Court.

I.

On June 23, 2005, a grand jury returned an indictment (District Court No. 05-CR-179), charging Goodson with three counts of intending to defraud and to use an unauthorized access device in violation of 18 U.S.C. § 1029(a)(2), and one count of wire fraud in violation of 18 U.S.C. § 1343. Thereafter, the government and Goodson entered into a plea agreement. Goodson agreed, *inter alia*, to: (1) plead guilty to count four of the 2005 indictment, charging him with wire fraud in violation of 18 U.S.C. § 1343; (2) waive his right to be indicted and to plead guilty to counts one and two of an information (District Court No. 06-CR-231), charging him with making and uttering counterfeit checks in violation of 18 U.S.C. § 513; and (3) "waive[] the right to take a direct appeal from his conviction or sentence under 28 U.S.C. § 1291 or 18 U.S.C. § 3742," subject

3

to certain exceptions.

The appellate waiver provision of the plea agreement states:

> 9. Daniel J. Goodson, III waives the right to take a direct appeal from his conviction or sentence under 28 U.S.C. § 1291 or 18 U.S.C. § 3742, subject to the following exceptions:
>
> > (a)  If the United States appeals from the sentence, Daniel J. Goodson, III may take a direct appeal from the sentence.
> >
> > (b)  If (1) the sentence exceeds the applicable statutory limits set forth in the United States Code, or (2) the sentence unreasonably exceeds the guideline range determined by the Court under the Sentencing Guidelines, Daniel J. Goodson, III may take a direct appeal from the sentence.
>
> The foregoing reservations of the right to appeal on the basis of specified issues do not include the right to raise issues other than those specified.

4

> Daniel J. Goodson, III further waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence.

The maximum penalties involved were set forth in the agreement, including the maximum term of supervised release of three years. On the last page of the plea agreement was an acknowledgment by Goodson that he had read the agreement, discussed it with his counsel, and accepted that it fully set forth the terms of his agreement with the government. Goodson signed this acknowledgment, and his counsel witnessed his signature.

The following day, during the change of plea hearing, the District Judge conducted a plea colloquy, during which Goodson affirmed that he was 31 years of age, had a college degree, and understood the English language. The Court reviewed the various rights that Goodson was giving up by pleading guilty. She also reviewed what the government was required by law to prove if Goodson went to trial. In explaining the maximum penalties Goodson faced if convicted, the Court addressed not only the maximum term of imprisonment, but also the fine, the term of supervised release, the mandatory special assessment, and restitution. The Court noted the existence of the plea agreement and requested that the prosecutor review the substance of the agreement on the record. In describing the

5

waiver, the prosecutor stated:

> There is a waiver provision in the plea agreement that deals with him waiving his right to take a direct appeal from his conviction. There are certain exceptions that are specified in the agreement which would permit him to take an appeal under those circumstances. He also agrees to the waiver of his right to file a 28 U.S.C. § 2255 motion.

At the conclusion of the prosecutor's statement, the District Judge asked Goodson if he had heard the prosecutor's recitation. Goodson affirmed that he had. The Court then asked if Goodson understood what the prosecutor had said. Goodson again replied in the affirmative. Later during the proceeding, this exchange took place:

> Court: Do you understand that under certain circumstances, this relates to what you have given up in the plea agreement, you or the government may have the right to appeal any sentence that I impose?
>
> Defendant: Yes, Your Honor.
>
> Court: But do you understand that you have given up substantial appellate rights in the plea agreement?

6

Defendant: Yes, Your Honor.

Thereafter, Goodson pleaded guilty to the wire fraud count in the indictment, and the two counts of making and uttering a counterfeit security. The Court found that Goodson's pleas were knowing and voluntary, and accepted them.

Subsequently, the District Court sentenced Goodson on both the 2005 and the 2006 criminal actions to concurrent terms of 27 months of imprisonment, which were to run concurrently, in part, with sentences previously imposed by the Allegheny County Court of Common Pleas. In addition, the Court imposed a three year period of supervised release, including as a condition of supervised release that Goodson maintain gainful employment and that Goodson "shall consent to the United States Probation Office conducting periodic unannounced examinations of his computer system(s)" and that he "shall submit to [sic] his person, residence, place of business, computer, and/or vehicle to a warrantless search conducted and controlled by the United States Probation Office at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release."

At the conclusion of the sentencing hearing, the District Court advised that Goodson had the right to appeal his sentence within ten days. On the heels of this statement, the prosecutor reminded the Court that Goodson "waived his right to appeal in

7

this case" with certain exceptions enumerated therein. In response, the Court clarified that "whatever is not covered by the waiver in the plea agreement, you have a right to appeal on." *Id.*

Goodson filed a timely appeal from the sentences imposed in both the 2005 and the 2006 criminal actions. The government did not file a motion to dismiss the appeal through enforcement of the appellate waiver. Instead, the parties complied with the briefing schedule issued by this Court. Goodson asserted in his appellate brief that the condition of supervised release requiring that he consent to a warrantless search of his "place of business" was "so broad it is beyond the court's power to order and the defendant's power to obey."

The government then raised the appellate waiver issue for the first time, arguing that Goodson had knowingly waived his right to challenge this portion of his sentence.[1] The government

---

[1]The government could have raised the applicability of Goodson's appellate waiver prior to briefing on the merits of the appeal by filing a motion for summary action under Third Circuit L.A.R. 27.4, seeking enforcement of the appellate waiver and dismissal of the appeal. Consistent with Third Circuit I.O.P. 10.6, the government would have been afforded an opportunity to submit argument in support of its motion, together with the copies of the plea agreement and plea colloquy. The defendant also would have been afforded the

cited Goodson's failure either to mention the appellate waiver in his initial brief or to explain why the issue he was raising was not encompassed by the waiver. In addition, the government addressed the merits of Goodson's challenge to the condition of supervised release requiring that he consent to a search of his business.

Goodson filed a reply brief. In it, he argued that the appellate waiver did not clearly and unambiguously preclude a challenge to the conditions of supervised release, and he asserted that the burden was on the government to demonstrate that the waiver extended to the question in this appeal, *i.e.*, "whether the term 'sentence' clearly and unambiguously includes any and all conditions of supervised release, particularly those not suggested by the statute." According to Goodson, "sentence" means only the term of incarceration. Moreover, Goodson argued in his reply brief that his waiver was neither knowing nor voluntary because the District Court failed to conduct an adequate colloquy under Federal Rule of Criminal Procedure 11(b)(1)(N).

II.

The District Court exercised jurisdiction under 18 U.S.C. § 3231. In *United States v. Gwinnett*, 483 F.3d 200, 203 (3d Cir. 2007), we declared that we have "subject matter jurisdiction

---

opportunity to submit opposition to such a motion.

9

over the appeal by a defendant who had signed an appellate waiver." Our jurisdiction arises under 18 U.S.C. § 3742(a). *See United States v. Cooper*, 437 F.3d 324, 327-28 (3d Cir. 2006).

III.

In *United States v. Khattak*, 273 F.3d 557 (3d Cir. 2001), we held that "waivers of appeals are generally permissible if entered into knowingly and voluntarily, unless they work a miscarriage of justice." *Id.* at 558. After concluding that Khattak's waiver was enforceable, we declared that we lacked jurisdiction to consider the merits of his appeal. *Id.* at 563. Because we tied the validity of an appellate waiver to appellate jurisdiction, defendants routinely addressed the validity and enforceability of such waivers in the initial appellate brief.

Subsequently, in *Gwinnett*, we clarified that "notwithstanding the statement in *Khattak,* this court retains subject matter jurisdiction over the appeal by a defendant who had signed an appellate waiver." 483 F.3d at 203 (discussing *Khattak*, 273 F.3d at 563). Because an appellate waiver is not dispositive of whether we may exercise appellate jurisdiction, it is unclear in the wake of *Gwinnett* whether a defendant must affirmatively address the applicability of an appellate waiver in his opening brief. In other words, we must decide in the matter before us whether a defendant may wait and question for the first time in his reply brief the government's contention that the

10

appellate waiver bars his appeal.  If he may not, then a defendant's silence in his opening brief regarding the non-applicability of the waiver will constitute an abandonment of any challenge to the government's invocation of the waiver.

In our view, judicial efficiency is the only basis that weighs in favor of requiring a defendant to affirmatively address the applicability of an appellate waiver in his opening brief, and then only slightly.  Our standard briefing schedule does not provide an opportunity for the government to respond to arguments raised in a defendant's reply brief.  Accordingly, strict adherence to the standard three-step order of battle could result in a waiver issue being inadequately briefed.  Permission to allow the government to file a sur reply elongates the process by adding an additional step, with whatever additional time and resources such a step requires.  This, however, seems a small price to pay in exchange for the assurance that both a defendant and the government will have an adequate opportunity to fully address the validity *vel non* of an appellate waiver.

The judicial efficiency argument is outweighed by several reasons that favor permitting a defendant to wait until the government first chooses to invoke the waiver.  First, it is, by and large, the government that bargains for and benefits from an appellate waiver in a plea agreement.  *See United States v. Hahn*, 359 F.3d 1315, 1328 (10th Cir. 2004) (en banc).  For that reason, if the government seeks to preserve the benefit of its bargain for an appellate waiver, we believe it is incumbent upon

11

the government to invoke the waiver's applicability in the first instance.[2]  Indeed, in *United States v. Hall*, 515 F.3d 186 (3d Cir. 2008), we noted that the Government did not move to summarily affirm the appeal or to enforce the waiver.  Because the government addressed Hall's arguments on the merits, we did likewise.  *Id.* at 193-94.  Thus, we acknowledged that an appellate waiver may have no bearing on an appeal if the government does not invoke its terms.  *See also United States v. Story*, 439 F.3d 226 (5th Cir. 2006) (concluding that when the government does not seek to enforce an appellate waiver, the waiver is not binding).  Once invoked, however, the waiver is at issue and the defendant should be afforded the opportunity to respond in his reply brief to the government's contention that the

---

[2]To obtain the full benefit of its bargain, we emphasize that the government may file a motion for summary action under Third Circuit L.A.R. 27.4 to enforce the waiver and to dismiss the appeal.  The defendant may then submit argument in opposition.  *See* Third Circuit I.O.P. 10.6.  A motions panel will then rule on the enforceability of the waiver.  This approach is beneficial to the government because briefing at this stage is limited to the validity and scope of the waiver.  *See United States v. Hahn*, 359 F.3d 1315, 1328 (10th Cir. 2004) (en banc) (adopting intra-circuit procedure, which encourages the government to file a motion to enforce, which addresses the validity and scope of the waiver, "but not the underlying merits of the defendant's appeal").

waiver is enforceable and warrants dismissal of the appeal.[3]

In other words, the mere fact that a plea agreement contains a waiver of a defendant's right to file a direct appeal does not mean that the enforceability of that waiver is automatically at issue in that appeal. This is so because the government may always choose not to invoke an appellate waiver.[4] Where the government has not first invoked an

_____

[3]Our acknowledgment that the government usually bargains for and benefits from an appellate waiver is consistent with the well-established principle that "'[p]lea agreements, although arising in the criminal context, are analyzed under contract law standards[.]'" *United States v. Williams*, 510 F.3d 416, 422 (3d Cir. 2007) (quoting *United States v. Nolan-Cooper,* 155 F.3d 221, 236 (3d Cir.1998)). Although it is an imperfect analogy, in the civil context, "waiver" and the validity of a contractual provision are affirmative defenses that must be pleaded by the party seeking to avoid liability. FED. R. CIV. P. 8(c). We do not expect a plaintiff to raise invalidity in her complaint. Thus, the approach we set forth is not only logical inasmuch as it requires the party relying upon a waiver provision to affirmatively invoke it, it is also in conformity with our traditional regime of resolving waiver issues in civil litigation.

[4]There are any number of reasons that the government may choose not to invoke the waiver. For example, the government may be of the view that the best way to address the defendant's challenge is on the merits of the issue raised. Alternatively, the government may recognize that the waiver

13

appellate waiver, there is no reason for any party to address the enforceability of the waiver. Allowing the defendant to respond in his reply brief to the government's invocation of a waiver, however, requires the government in the first instance to do the heavy lifting and to explain why an appellate waiver should preclude our review.

The second reason for allowing a defendant to address the inapplicability of an appellate waiver in his reply brief is because a defendant may file his opening brief with a reasonable belief that the appellate waiver in his plea agreement does not extend to the issue or issues raised in his appeal. Indeed, in *Khattak*, we expressed our belief that "waivers of appeals should be strictly construed." 273 F.3d at 562. Thus, the language of a waiver, like the language of a contract, matters greatly. If a waiver provides limited grounds for appeal, it follows that some appeals will not be barred by an appellate waiver. If the government believes that a waiver prohibits the appeal, however, it may invoke the waiver and set forth the reasons why we should find it precludes our review. A defendant, however, should not be foreclosed from asserting in his reply brief what may be a meritorious argument concerning the unenforceability of an appellate waiver he does not believe bars our review.

---

does not encompass the issue raised by the defendant, or that the Rule 11 colloquy was deficient and that the waiver might not be enforceable.

14

Third, we must be mindful that the federal criminal rules seek to protect a defendant who agrees to waive his appeal rights by mandating in Rule 11(b)(1)(N) that "[b]efore the [district] court accepts a plea of guilty . . . the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following: . . . (N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." FED. R. CRIM. P. 11(b)(1)(N). This provision was adopted because the Advisory "Committee believed it was important to insure first, a complete record exists regarding any waiver provisions, and second, that the waiver was voluntarily and knowingly made by the defendant." *Id.* (Advisory Committee Notes, 1999 Amendment) (discussing subdivision (c)(6), which became part of subdivision (b)(1) with reorganization in 2002). These procedural protections, we believe, strongly militate in favor of affording a defendant an opportunity to dispute in his reply brief whether his waiver prohibits his appeal. Indeed, were we to hold that a defendant forfeited his opportunity to challenge the validity and enforceability of an appellate waiver merely by not having done so in his opening brief, we would be adopting an approach that conflicts with the spirit and purpose of Rule 11(b)(1)(N).

We recognize that in *United States v. Miliano*, 480 F.3d 605 (1st Cir. 2007), the First Circuit declared that

a defendant who waives his right to appeal and

15

thereafter attempts to avoid the effect of the waiver must confront the waiver head-on. Where, as here, the defendant simply ignores the waiver and seeks to argue the appeal as if no waiver ever had been executed, he forfeits any right to contend either that the waiver should not be enforced or that it does not apply. . . . Miliano's appeal is subject to dismissal for this reason alone.

*Id.* at 608. *Miliano* does not guide our analysis, however, because the defendant in *Miliano* effectively abandoned any challenge to the validity of the appellate waiver by failing to discuss the waiver in either his initial brief or his reply brief.

In sum, we hold that a defendant is not obliged in his opening brief to acknowledge the existence of an appellate waiver and/or to explain why the waiver does not preclude appellate review of the substantive issue raised. Rather, it is only after the government has invoked an appellate waiver as a bar to our review that a defendant must raise any challenge to the waiver's enforceability.[5]

Because the government has invoked the appellate waiver

---

[5]We by no means suggest that a defendant should never address the applicability of an appellate waiver in his opening brief. Such an approach is, however, one of tactical importance only.

contained in Goodson's plea agreement, and because Goodson attacks both the scope and the validity of the waiver in his reply brief, we proceed to determine whether that waiver bars our review of the condition of supervised release allowing warrantless searches of his computer at his place of business.

## IV.

In *United States v. Jackson*, 523 F.3d 234 (3d Cir. 2008), we considered whether a defendant's waiver of her right to appeal prohibited her from challenging the reasonableness of her sentence. There, we enumerated three elements to be considered when the government invokes an appellate waiver and the defendant contends that the waiver does not bar her appeal: (1) whether the waiver "of the right to appeal her sentence was knowing and voluntary;" (2) "whether one of the specific exceptions set forth in the agreement prevents the enforcement of the waiver;" *i.e.*, what is the scope of the waiver and does it bar appellate review of the issue pressed by the defendant; and (3) "whether enforcing the waiver would work a miscarriage of justice." *Id.* at 243-244.

## A.

Goodson's appellate waiver was broad, waiving "the right to take a direct appeal from his conviction or sentence under 28 U.S.C. § 1291 or 18 U.S.C. § 3742," unless (1) the government appealed from the sentence, (2) the sentence

17

exceeded the applicable statutory limits set forth in the United States Code, or (3) the sentence unreasonably exceeded the guideline range determined by the District Court in applying the United States Sentencing Guidelines. Inasmuch as the government did not appeal, and mindful that Goodson's sentence of 27 months exceeded neither the statutory limit of twenty years for wire fraud nor the guideline range of 27-33 months determined by the District Court, it appears that the waiver precludes appellate review.

Goodson, however, contends that the special condition of supervised release imposed by the District Court is excepted from the appellate waiver because it is not among either the mandatory or discretionary conditions set forth in the United States Code, and thereby exceeds the applicable statutory limits.[6] This is a creative argument, but it ignores the plain text of 18 U.S.C. § 3583(d), which enumerates both mandatory and discretionary conditions of supervised release, and provides that "[t]he court may order, as a further condition of supervised release . . . any other condition it considers to be appropriate."

---

[6]We exercise plenary review in deciding whether an issue raised by a defendant falls within the scope of an appellate waiver in his plea agreement. *United States v. Joyce*, 357 F.3d 921, 922 (9th Cir. 2004).

18 U.S.C. § 3583(d).[7] *See United States v. Voelker*, 489 F.3d 139, 143-44 (3d Cir. 2007) (recognizing that conditions other than the listed mandatory and discretionary conditions of supervised release in § 3583(d) may be imposed by a district court in order to tailor the conditions to the specific offense and offender).

Alternatively, Goodson points out that *Khattak* requires that we strictly construe the terms of an appellate waiver, 273 F.3d at 562, and he asserts that the waiver's use of the term "sentence" should be construed to mean only the term of incarceration. We disagree.

For a criminal defendant, a sentence is the pronouncement by the sentencing court, pursuant to chapter 227 of the Federal Crimes Code concerning "Sentences," of the punishment for "a defendant who has been found guilty of an offense . . . in any Federal statute . . . ." 18 U.S.C. § 3551(a).

---

[7]Goodson also asserts that the special condition of supervised release at issue exceeds the applicable guideline because it is not among the mandatory or discretionary conditions set forth in U.S.S.G. § 5D1.3. This argument also falls short, because guideline § 5D1.3(b), like § 3583(d), addresses the ability of the sentencing court to impose "other conditions of supervised release" to the extent they are reasonably related to some of the factors set forth in 18 U.S.C. § 3553(a).

Section 3551 provides that "a defendant who has been found guilty of an offense described in any federal statute . . . shall be sentenced in accordance with the provision of this chapter [227] so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) . . . ." 18 U.S.C. § 3551. Under chapter 227 of the Federal Crimes Code, the period of incarceration is but one component of the sentence. Other components may be probation under § 3561, supervised release under § 3583, a fine under § 3571, and/or restitution under § 3556.

Indeed, § 3583(a) provides that "[t]he court, in imposing a sentence to a term of imprisonment for a felony . . . may include as a *part* of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment." 18 U.S.C. § 3583(a) (emphasis added). Subsection (d) of this statutory provision enumerates certain mandatory and discretionary conditions of supervised release that a defendant must comply with during any such term of supervision, and provides, as we noted above, that "[t]he court may order, as a further condition of supervised release . . . any other condition it considers to be appropriate." 18 U.S.C. § 3583(d). Thus, the duration, as well as the conditions of supervised release are components of a sentence. By waiving his right to take a direct appeal of his sentence, Goodson waived his right to challenge the conditions of his supervised release, which were by definition a part of his sentence. *See United States v. Perez*, 514 F.3d 296 (3d Cir. 2007) (concluding that

20

restitution, which was part of defendant's sentence, was subject to defendant's appellate waiver).

In our view, the text of the waiver before us establishes that the term "sentence" as used in Goodson's appellate waiver applies to not only the period of incarceration that will be imposed, but also any other component of punishment. By stating that Goodson "waives the right to take a direct appeal from his . . . sentence under . . . 18 U.S.C. § 3742," the provision explicitly bars any appeal relying upon § 3742 for jurisdiction. Because § 3742 is the only statutory section that provides jurisdiction for an appeal of a condition of supervised release, Goodson's waiver bars his challenge.

In *United States v. Joyce,* the Ninth Circuit considered this same issue. It reasoned:

> Despite the dual meaning of "sentence" in common usage, the statute that provides the only source of Joyce's right to appeal is crystal clear. Under 18 U.S.C. § 3742(a)(3), a "sentence" can include fines, periods of imprisonment, and supervised release, and mandatory and special conditions of supervised release. That is the only statutory basis upon which Joyce may invoke the jurisdiction of this court to challenge any aspect of the sentence imposed, including an attack on specific conditions of his supervised release.

21

357 F.3d 921, 924 (9th Cir. 2004). The Tenth Circuit agreed with this rationale in *United States v. Sandoval*, 477 F.3d 1204 (10th Cir. 2007), concluding that "[s]upervised-release conditions are part of the sentence: and the reference to 18 U.S.C. § 3742 (the statutory basis for sentence appeals) in ¶ 10 of the plea agreement makes clear that the waiver encompasses all appellate challenges to the sentence other than those falling within the explicit exception for challenges to upward departures." *Id.* at 1207 (citing *Joyce*, 357 F.3d at 922-24). *See also United States v. Andis*, 333 F.3d 886, 892 n.7 (8th Cir. 2003) (noting that waiver of "all rights to appeal whatever sentence is imposed" included that "portion of sentence which involved the imposition of a term of supervised release and its conditions"); *United States v. Sines*, 303 F.3d 793, 798-99 n.3 (7th Cir. 2002) (finding that waiver of right to appeal any portion of his sentence that was within the guideline range constituted a waiver of Sines's right to appeal the "terms of his supervised release").

Accordingly, we hold that Goodson's waiver of his right to appeal his sentence under § 3742 encompassed his right to appeal the conditions of his supervised release.[8]

_____

[8]Although we hold that the term "sentence" in Goodson's appellate waiver encompasses the conditions of supervised release, we would add that the government is of course free to include explicit language in its waivers detailing whether the waiver applies to the right to appeal the term of incarceration

22

B.

Inasmuch as Goodson's challenge to the condition of supervised release is within the scope of his appellate waiver, we must consider his argument that his waiver was unknowing and involuntary because the District Court did not conduct an adequate colloquy under Federal Rule of Criminal Procedure 11(b)(1)(N). Rule 11(b)(1)(N), as we noted above, mandates that "[b]efore the court accepts a plea of guilty . . . the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following: . . . (N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence."

1.

In *United States v. Vonn*, 535 U.S. 55 (2002), the Supreme Court held that a defendant, who has not objected in the trial court to a Rule 11 error, "has the burden to satisfy the plain-error rule and that a reviewing court may consult the whole record when considering the effect of any error on substantial rights." *Id.* at 59. Plain error requires that there must

alone, or all components of the sentence to be imposed. Such language may have the advantage of avoiding future challenges of this kind.

23

be (1) error, (2) that is plain or obvious, and (3) that affects a defendant's substantial rights. *Johnson v. United States*, 520 U.S. 461, 467 (1997); *United States v. Olano*, 507 U.S. 725, 732 (1993). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 467 (quoting *Olano*, 507 U.S. at 732) (internal quotation marks omitted). In conducting plain error review, it is the "defendant rather than the Government who bears the burden of persuasion with respect to" whether the error affected his substantial rights. *Olano*, 507 U.S. at 734.

In *United States v. Edgar*, 348 F.3d 867 (10th Cir. 2003), the Tenth Circuit applied *Vonn*'s plain error standard in reviewing a defendant's contention that his appellate waiver was unenforceable because his plea colloquy was deficient. The Tenth Circuit noted Rule 11(b)(1)(N)'s requirements and reasoned that "[i]n light of the clear text of Rule 11(b)(1)(N) and the Supreme Court's decision in *Vonn*, we see no reason why we should treat Rule 11(b)(1)(N) any differently." *Id.* at 870. The Court instructed that "it is always error for a district court to fail to discuss an appellate waiver provision during a Rule 11 colloquy, although not always reversible error." *Id.* at 871. Such error, the Court concluded, was also plain and obvious as the congressional mandate in the Rule was clear. *Id.* at 871-72. After considering the plea agreement and colloquy, the Court concluded that Edgar had failed to meet his burden of

24

establishing that he did not understand the waiver and that the deficient colloquy had affected his substantial rights. *Id.* at 872-73. As a result, the Court concluded the waiver was enforceable and dismissed the appeal.

The Sixth, Seventh, and Ninth Circuit Courts of Appeals also have applied plain error review to a defendant's claim that his appellate waiver should be unenforceable because of an inadequate colloquy. *See United States v. Arellano-Gallegos*, 387 F.3d 794, 796 (9th Cir. 2003); *United States v. Murdock*, 398 F.3d 491, 496 (6th Cir. 2005); *United States v. Sura*, 511 F.3d 654, 658 (7th Cir. 2008). We agree with our sister courts of appeals that *Vonn*'s plain error standard of review should be applied when assessing whether there was a violation of Rule 11(b)(1)(N), which warrants setting an appellate waiver aside.[9]

---

[9]We note that *Vonn*'s plain error standard applies only to unobjected-to violations of Fed. R. Crim. P. 11, where the district court has failed to "inform the defendant of, and determine that the defendant understands," a factor enumerated in Rule 11(B)(1), including the waiver of the right to appeal or collaterally attack the sentence. The plain error standard does not apply when a defendant's challenge to the knowing or voluntary nature of a waiver does not involve the district court's compliance with the plea colloquy required by the Rule. For example, a defendant who claims that he was misled or coerced into entering the agreement, or that he was incompetent when he signed the waiver, challenges the validity of the waiver itself, not the Rule 11 colloquy. Such a challenge would receive *de*

2.

Consistent with *Vonn*'s plain error standard, we consult the "whole record" in determining whether there is a basis for holding Goodson's appellate waiver unenforceable. In light of the circumstances surrounding Goodson's agreement to enter a plea, the plain language of the plea agreement and the District Court's colloquy, we conclude that there was error and that the error was obvious in light of the plain dictates of Rule 11(b)(1)(N). The rule clearly provides that the District Court "must address the defendant personally" and "must inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." FED. R. CRIM. P. 11(b)(1)(N). Here, the District Court relied upon the prosecutor's recitation of the terms of the appellate waiver to fulfill its obligation to inform the defendant of the specifics of the waiver provision. This was error. Although the Court did ask Goodson personally whether he understood that he had given up substantial appellate rights, we cannot ignore that there was no effort to verify that Goodson understood the breadth of the waiver or to underscore the fact that the waiver meant that, subject to three very narrow exceptions, Goodson was giving up

---

*novo* review without the need for objection in the district court. *See United States v. Gwinnett*, 483 F.3d 200, 203 (3d Cir. 2007); *United States v. Khattak*, 273 F.3d 557, 560 (3d Cir. 2001).

26

the right to appeal both the validity of his plea and the legality of his sentence. This too was error.[10] *See Edgar*, 348 F.3d at 871; *Arellano-Gallegos*, 387 F.3d at 796-97; *Murdock*, 398 F.3d at 497; and *Sura*, 511 F.3d at 661.

Our inquiry is not limited, however, to whether there was a technical violation of Rule 11. Rather, we must determine whether Goodson, who bears the burden of persuasion, *Olano*,

---

[10]This error was compounded, in our view, by the government's failure to ask the District Court to comply with the mandate of Rule 11(b)(1)(N). We pause to remind district courts of the centrality of their role in assuring that defendants fully understand the scope and terms of an appellate waiver. *See Khattak*, 273 F.3d at 563 (observing that the role of the district judge "is critical"). We believe that the directive in Rule 11(b)(1)(N) is best effectuated when the district courts advise the defendants of the specifics of the appeal waiver and ascertain whether defendants understand: the specifics of the appellate waiver; its breadth; the limited exceptions that may be set forth in the waiver; and the frequency or infrequency with which such an exception occurs. For example, Goodson's waiver allowed for an appeal if his sentence exceeded the statutory maximum for the offense of conviction. This exception is unlikely to occur. As a result, to the extent a defendant perceives that the exception provides him some avenue to seek relief, a colloquy intended to dispel that view is likely to achieve Rule 11's purpose of assuring that the waiver was both knowing and voluntary.

507 U.S. at 734, has demonstrated that the deficient colloquy affected his substantial rights by precluding him from knowing of and understanding the significance of the binding appellate waiver in the plea agreement. Here, the evidence demonstrates that Goodson was college educated, and had successfully perpetrated wire fraud and the uttering of counterfeit checks, that he was able to read the plea letter and to comprehend the meaning of its provisions, that the District Court explained that his punishment would include a period of supervised release, that the prosecutor generally discussed the terms of the appellate waiver, and that Goodson advised the Court that he understood that his right to appeal was substantially limited. In fact, the day before the change of plea hearing, Goodson had executed the acknowledgment on the final page of his plea agreement, indicating that he had read the agreement, which included the appeal waiver, and discussed it with his counsel. His counsel also witnessed Goodson's execution of the document.

Under these circumstances, we conclude that Goodson has failed to meet his burden of proving that the deficient Rule 11 colloquy precluded him from understanding that he had a right to appeal and that he had substantially agreed to give up that right. We hold that Goodson's substantial rights were not affected by the inadequate colloquy. In the absence of plain error under *Vonn*, there is no basis for setting aside the appellate

28

waiver in this case.[11] *Cf. Murdock*, 398 F.3d at 498 (concluding that complete omission in Rule 11 colloquy affected defendant's substantial rights, but noting that it might be sufficient for a prosecutor to summarize the key elements of a plea agreement and to address the scope of an appellate waiver); *Arellano-Gallegos*, 387 F.3d at 797 (setting aside appellate waiver

---

[11]In *Olano*, the Supreme Court explained that "Rule 52(b) is permissive, not mandatory. If the forfeited error is 'plain' and 'affect[s] substantial rights,' the court of appeals has authority to order correction, but is not required to do so." 507 U.S. at 735. The Supreme Court further noted that it had "previously explained that the discretion conferred by Rule 52(b) should be employed in those circumstances in which a miscarriage of justice would otherwise result." *Id.* at 736 (omitting citations and internal quotation marks). It declared, however, that "the standard that should guide the exercise of remedial discretion under Rule 52(b)" is that the "Court of Appeals should correct a plain forfeited error affecting substantial rights if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at 736 (citation, internal quotation marks and brackets omitted). Because we have determined that the Rule 11 error did not affect Goodson's substantial rights, we also conclude that the enforcement of the waiver will not work a miscarriage of justice. *See Jackson*, 523 F.3d at 244 (instructing that the third element to be considered in deciding whether an appellate waiver is enforceable is whether enforcement would constitute a miscarriage of justice).

29

because there was a "wholesale omission" of the appellate waiver in the Rule 11 colloquy); *see also Sura*, 511 F.3d at 662 (noting that utter silence about waiver of appellate rights supported a finding that defendant's substantial rights were affected by deficient colloquy).

V.

For the reasons set forth above, we conclude that Goodson's appeal of one of the conditions of his supervised release is subject to the appellate waiver contained in his plea agreement. Although the District Court's colloquy regarding the appellate waiver was less than Rule 11(b)(1)(N)'s ideal, the record fails to demonstrate that the error affected Goodson's substantial rights. Accordingly, we conclude that the appellate waiver is enforceable and we will affirm the judgment of the District Court.