

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-28-2009

# USA v. Kheirallah Ahmad

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1374

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Kheirallah Ahmad" (2009). *2009 Decisions.* Paper 1468.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1468

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————————

No. 08-1374

———————————

UNITED STATES OF AMERICA

v.

KHEIRALLAH AHMAD,
a/k/a POLICE OFFICER KENNY

Kheirallah Ahmad,
Appellant

—————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-07-CR-00322-001
District Judge: The Honorable Eduardo C. Robreno

—————————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 14, 2009

Before: McKEE, SMITH, *Circuit Judges*
and STEARNS, *District Judge*[*]

(Filed: April 28, 2009)

—————————

OPINION

—————————

SMITH, *Circuit Judge.*

    Kheirallah Ahmad appeals from the sentence of 48 months of imprisonment

---

[*]The Honorable Richard G. Stearns, District Judge for the United States District
Court for Massachusetts, sitting by designation.

imposed by the United States District Court for the Eastern District of Pennsylvania. He contends that the District Court erred in calculating his total offense level by applying a four-level enhancement for his role in the offense pursuant to § 3B1.1 of the United States Sentencing Guidelines (U.S.S.G.). The government contends that Ahmad's appeal is barred by the terms of an appellate waiver that was a condition of his plea agreement. Ahmad contends that the waiver does not bar his appeal for several reasons. We disagree. Because Ahmad's appellate waiver will not work a miscarriage of justice, we will enforce the waiver and will affirm the judgment of the District Court.

## I.

In June of 2007, Ahmad agreed to waive his right to be indicted by a grand jury and to plead guilty to a two-count information, charging him with violating 18 U.S.C. § 371, and 26 U.S.C. § 7206(1). The criminal charges stemmed from a scheme in which Ahmad, who owned and operated several markets in Philadelphia with his relatives, paid certain employees cash under the table and "intentionally failed to truthfully collect, account for, and pay over payroll taxes." Although the Guilty Plea Agreement contained several stipulations relative to sentencing, there was no agreement between the parties regarding Ahmad's role in the offense. Indeed, the Guilty Plea Agreement specifically stated that Ahmad "understands that the government may seek an offense-level increase, pursuant to Guideline Section 3B1.1(a), because the defendant acted as an organizer, leader, manager, and/or supervisor of the criminal activity charged in the information." In addition, the Agreement contained a broad appellate waiver which waived all of

2

Ahmad's rights to appeal or collaterally attack his conviction, sentence, or any other matter relating to his prosecution. The waiver was subject to a few narrow exceptions. Ahmad could appeal if the government appealed, or if at sentencing the District Court imposed a sentence that exceeded the statutory maximum, erroneously departed upward pursuant to the sentencing guidelines, or imposed in the exercise of the Court's discretion under *United States v. Booker*, 125 S. Ct. 738 (2005), an unreasonable sentence above the final sentencing guideline range determined by the District Court. In addition to the Guilty Plea Agreement, Ahmad executed an Acknowledgment of Rights that listed the rights he possessed and that he would be giving up by pleading guilty, including his right to file an appeal.

Ahmad was born on the West Bank and emigrated to the United States in 1978, becoming a naturalized citizen thereafter. At the start of the change of plea hearing, the District Court inquired about Ahmad's ability to read and understand the English language. After a probing colloquy regarding his proficiency with the English language, the District Court determined that it was satisfied that Mr. Ahmad was able to read, speak, and understand the English language.

After waiving his right to be indicted by a grand jury, the District Court asked the prosecutor to review the terms of the Guilty Plea Agreement. The prosecutor's recitation included the fact that Ahmad had waived his appellate rights. In response to inquiries from the Court, Ahmad affirmed that his counsel had read the Guilty Plea Agreement to him, that he understood it, and "that's why I signed it." The Court proceeded to ask

3

Ahmad if he understood specific rights, including the fact that if he went to trial and was found guilty, that he would be able to appeal the verdict and that he could have an attorney represent him if he could not afford an attorney. Ahmad replied: "Yes, your honor." The Court continued, and asked if Ahmad understood "that by pleading guilty, you are giving up the right to appeal from any conviction at the trial and that the only appeal from the guilty plea would be if I impose an illegal sentence . . .?" Ahmad again responded: "Yes, your honor." Ahmad further acknowledged that he was greatly limiting his right to appeal and to any later collateral attack by pleading guilty. After the Court finished reviewing Ahmad's rights, it asked if Ahmad still wanted to enter a plea of guilty. He answered in the affirmative and pleaded guilty to the charges in the information.

The Court directed the preparation of a presentence investigation report (PSR). The PSR provided for a four-level upward adjustment under U.S.S.G. § 3B1.1 of Ahmad's offense level to account for his leadership role in the offense. Despite Ahmad's objection, the District Court concluded that the enhancement was warranted. With the four-level enhancement, Ahmad's total offense level was 23. Application of this offense level and Ahmad's criminal history category of I yielded a guideline range of 46 to 57 months. Although the prosecutor asked for a sentence at the top parameter of the guideline range, the Court imposed a sentence of 48 months of imprisonment. After announcing its sentence, the District Court advised Ahmad of his "right to appeal the sentence of this Court." Because the sentence of 48 months exceeded the maximum

4

sentence of three years for the § 7206 offense, the District Court amended the judgment, imposing a sentence of 48 months of imprisonment on the § 371 conspiracy and 36 months of imprisonment on the § 7206 offense, to be served concurrently.

Ahmad filed a timely appeal.[1] He asserts that the District Court erred by imposing under U.S.S.G. § 3B1.1 a four-level leadership role enhancement. In Ahmad's view, the appellate waiver does not preclude him from challenging this enhancement.

## II.

In *United States v. Khattak*, 273 F.3d 563, 558 (3d Cir. 2001), we held that "waivers of appeals, if entered into knowingly and voluntarily, are valid unless they work a miscarriage of justice." Because the government has invoked the appellate waiver set forth in the Guilty Plea Agreement, we must consider: (1) whether the appeal waiver was knowing and voluntary; (2) whether one of the specific exceptions in the appeal waiver precludes enforcement of the waiver here; and (3) whether enforcing the waiver would work a miscarriage of justice. *United States v. Goodson*, 544 F.3d 529, 536 (3d Cir. 2008). Ahmad asserts that the appellate waiver is unenforceable for several reasons.

## A.

Initially, Ahmad contends that the appeal waiver is invalid because the District Court failed to ensure that he understood the terms of the written waiver in light of his limited ability to read and write the English language. We are not persuaded that

---

[1]The District Court had jurisdiction under 18 U.S.C. § 3231. We exercise appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Ahmad's limitations with the English language precluded him from understanding the terms of the Guilty Plea Agreement or the significance of the change of plea hearing. Indeed, the District Court was cognizant that a language barrier might be at play and took the necessary time to verify that Ahmad was capable of understanding the charges against him, the constitutional rights he possessed if he went to trial, the rights that Ahmad was waiving by pleading guilty, and the maximum penalties Ahmad faced.

Ahmad further argues that the waiver is invalid because the District Court failed to ensure during the colloquy that he understood the terms of the appellate waiver. Because Ahmad did not object to the adequacy of the Rule 11 colloquy, we review for plain error whether any deficiency in the colloquy warrants setting aside the waiver. *Goodson*, 544 F.3d at 539 (citing *Vonn v. United States*, 535 U.S. 55, 59 (2002)). We conclude that the District Court failed to comply with the mandate of Federal Rule of Criminal Procedure 11(b)(1)(N) as it did not personally inform Ahmad of and determine that he understood the terms of the provision waiving the rights to appeal and to collaterally attack his sentence. As we explained in *Goodson*, such failure constitutes error and the error is obvious. 544 F.3d at 540.

This, however, is not a sufficient basis for setting aside the appellate waiver. To succeed on plain error review, Ahmad must also demonstrate that "the deficient colloquy affected his substantial rights by precluding him from knowing of and understanding the significance of the binding appellate waiver in the plea agreement." *Id.* The record before us reveals that, during the Rule 11 colloquy, Ahmad confirmed that his counsel

6

had read him the Guilty Plea Agreement "word for word,"' that he understood the Agreement, which included the appellate waiver, and that he signed it for that reason. He also signed the Acknowledgment of Rights, which reiterated that he had a right to file an appeal and that by pleading guilty he waived that right as set forth in the Guilty Plea Agreement. Both the Guilty Plea Agreement and the Acknowledgment of Rights were witnessed by his counsel. Despite any deficiency in the colloquy, the Court nonetheless confirmed that Ahmad was aware of the fact that he had a right to appeal, that he could have an attorney represent him on appeal, and that by pleading guilty he was giving up his right to appeal unless the District Court imposed an illegal sentence. Immediately before Ahmad pleaded guilty to the charges in the information, and in response to a question from the Court, Ahmad's counsel expressed her belief that Ahmad was competent to enter the plea. She expressed her belief that he was doing so voluntarily and with full understanding of his right to contest the charges against him. In light of these circumstances, we conclude that Ahmad has failed to demonstrate that his substantial rights were affected by the inadequate Rule 11 colloquy. Accordingly, we conclude that Ahmad's appeal waiver is enforceable.

Ahmad asserts that even if the appellate waiver is valid, it was rendered unenforceable by the District Court's advice at sentencing that he could file an appeal.[2] As we pointed out in *United States v. Corso*, 549 F.3d 921, 931 n.2 (3d Cir. 2008), a

---

[2]We exercise plenary review in deciding the validity of an appellate waiver. *United States v. Jackson*, 523 F.3d 234, 237 (3d Cir. 2008).

7

District Court's post-sentencing remarks pursuant to Federal Rule of Criminal Procedure 32(j)(1) will not render an otherwise enforceable appellate waiver ineffective. *Id.* (citing *United States v. Liriano-Blanco*, 510 F.3d 168, 173 (2d Cir. 2007)).

B.

Ahmad also asserts that his challenge to the District Court's enhancement for his leadership role is excepted from the appellate waiver. We conclude otherwise. Ahmad notes that his sentence of 48 months exceeded the three year statutory maximum for violating 26 U.S.C. § 7206(1). Although Ahmad is correct that this error, which was subsequently corrected by the District Court, allowed him to file a direct appeal, the explicit language of the waiver provides that his "appeal . . . may raise only" the claim that his sentence exceeded the statutory maximum for that count. Thus, this exception does not provide a basis for us to review the District Court's assessment of the leadership enhancement.

The other exceptions to the appellate waiver allow an appeal in the event the District Court's sentence is an upward departure from the guidelines range, or a variance above the guidelines range under *Booker*. Inasmuch as the District Court imposed a sentence within the guidelines range, neither exception affords Ahmad an avenue to appeal the enhancement based on his leadership role. Although Ahmad equates the enhancement with an upward departure under the sentencing guidelines, we rejected a similar argument in *United States v. Shedrick*, 493 F.3d 292, 298 n.5 (3d Cir. 2007).

C.

Ahmad contends enforcement of his appellate waiver will work a miscarriage of justice. Inasmuch as we have concluded that the Rule 11 error did not affect Ahmad's substantial rights, we reject the contention that enforcement of the waiver will work a miscarriage of justice. *Goodson*, 544 F.3d at 541 n.11.