NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4549
_____

UNITED STATES OF AMERICA

v.

GREGORY LADNER,
                                        Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2:06-cr-00224-001)
District Judge:  Honorable James Knoll Gardner

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 26, 2012
_____

Before:  SLOVITER, CHAGARES, and JORDAN, Circuit Judges.

(Filed: June 27, 2012)
_____

OPINION
_____

CHAGARES, Circuit Judge.

        Gregory Ladner appeals his fourteen-month sentence on the grounds that the

District Court impermissibly relied on an uncorroborated police report from the

Philippines in imposing a sentence at the high end of the advisory United States

Sentencing Guidelines range.  We will affirm the District Court's sentence.

I.

We write solely for the parties' benefit and, as such, we set forth only the facts essential to our disposition. This criminal action arose out of Ladner's July 2005 conviction in the United States District Court for the Eastern District of Pennsylvania for making false statements to a federal firearms licensee. In January 2006, Ladner was sentenced to eighteen months of imprisonment for that offense. The sentencing judge allowed Ladner to remain free on bail on the condition that he surrender for service of his sentence on February 9, 2006. Instead, Ladner applied for a new passport by falsely claiming that he had lost his previous passport and fled to the Philippines. Ladner was captured in the Philippines in May 2009 after a woman filed a police report claiming that Ladner sexually abused her. In the ensuing investigation, the Philippine police officers discovered that Ladner was wanted in the United States and helped to arrange for his deportation to California, where he made an initial appearance in federal court.

Meanwhile, on October 3, 2006, a grand jury in the Eastern District of Pennsylvania returned a superseding indictment charging Ladner with failure to surrender for service of sentence, in violation of 18 U.S.C. §§ 3146(a)(2) and (b)(1)(A)(ii), giving a false statement in an application and use of a passport, in violation of 18 U.S.C. § 1542, and escape, in violation of 18 U.S.C. § 751(a). After he was transported back to Pennsylvania from California, Ladner entered into a plea agreement in which he agreed to plead guilty to failure to surrender for service of sentence and the Government agreed to dismiss the other two charges. The plea agreement included a waiver of right to appeal, subject to limited exceptions.

2

On August 16, 2010, the District Court sentenced Ladner to fourteen months of imprisonment. The Court agreed with the parties that the base offense level for Ladner's conviction was nine and he was in criminal history category three. The advisory Sentencing Guidelines range was, therefore, eight to fourteen months. Both parties sought a sentence within that range and neither party argued for either the higher or lower end of that range. Ladner's one objection to the Pre-Sentence Report related to the Philippine police report. He argued that the District Court should not consider the report because it was uncorroborated and unreliable hearsay. The District Court overruled Ladner's objection and considered the Philippine police report because it demonstrated that Ladner had been apprehended in the Philippines rather than surrendering on his own.

Ladner timely appealed his sentence, maintaining that the District Court erred in overruling his objection and considering the Philippine police report because the Government failed to establish that the report was reliable. In response, the Government asserts that (1) Ladner's argument falls within the scope of the waiver of appeal in his plea agreement, and (2) Ladner's argument is without merit because the District Court did not impermissibly rely on the police report in making its sentencing determination.

II.

The District Court had subject matter jurisdiction over this criminal action pursuant to 18 U.S.C. § 3231 and we have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. "We exercise plenary review in deciding whether an issue raised by a defendant falls within the scope of an appellate waiver in his plea agreement." United States v. Goodson, 544 F.3d 529, 537 n.6 (3d Cir. 2008). An

3

appellate waiver does not divest this Court of subject matter jurisdiction. Instead, if we conclude that the waiver is enforceable, we will affirm the judgment of the District Court unless it would result in a miscarriage of justice. United States v. Gwinnett, 483 F.3d 200, 203, 206 (3d Cir. 2007).

When the Government invokes a waiver of the right to appeal, we consider three elements:

> (1) whether the waiver of the right to appeal h[is] sentence was knowing and voluntary; (2) whether one of the specific exceptions set forth in the agreement prevents the enforcement of the waiver; *i.e.,* what is the scope of the waiver and does it bar appellate review of the issue pressed by the defendant; and (3) whether enforcing the waiver would work a miscarriage of justice.

Goodson, 544 F.3d at 536 (quotation marks omitted). An error amounts to a miscarriage of justice only in "unusual circumstance[s.]" United States v. Khattak, 273 F.3d 557, 562 (3d Cir. 2001). The miscarriage of justice determination depends on factors such as

> [T]he clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

Id. at 563 (quotation marks omitted). This Court has explained that the miscarriage of justice exception to a waiver of appeal is extremely narrow:

> A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues – indeed, it includes a waiver of the right to appeal blatant error. Waiver would be nearly meaningless if it included only those appeals that border on the frivolous. . . . While it may appear unjust to allow criminal defendants to bargain away meritorious appeals, such is the necessary consequence of a system in which the right to appeal may be freely traded.

Id. at 562 (quotation marks omitted).

4

Ladner's plea agreement contained the following waiver of appeal:

In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C § 2255, or any other provision of law. This waiver is not intended to bar the assertion of constitutional claims that the relevant case law holds cannot be waived.

    a.    Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.

    b.    If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal but may raise only claims that:

        (1)    the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 4 above;

        (2)    the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines;

        (3)    the sentencing judge, exercising the Court's discretion pursuant to United States v. Booker, 125 S. Ct. 738 (2005), imposed an unreasonable sentence above the final Sentencing Guideline range determined by the Court.

Supplemental Appendix ("SA") 152–53.

It is evident that Ladner's waiver was knowing and voluntary. During the plea colloquy, the District Court explained the appellate rights that Ladner was waiving and asked six times whether Ladner understood the waiver. Ladner said yes each time. The District Court also verified that the plea agreement had been fully explained to Ladner and that he had had an opportunity to discuss it with counsel. The District Court

5

concluded that Ladner's plea was knowing and voluntary and that he was alert, competent, and capable of entering an informed plea. Ladner does not dispute those findings.

The Government asserts that none of the exceptions to the waiver apply here. While that is correct and Ladner has not argued otherwise, the waiver provides that it "is not intended to bar the assertion of constitutional claims that the relevant case law holds cannot be waived." Ladner argues that the District Court violated his right to due process by considering unreliable evidence in sentencing. See Roberts v. United States, 445 U.S. 552, 556 (1980) ("We have, however, sustained due process objections to sentences imposed on the basis of misinformation of constitutional magnitude." (quotation marks omitted)); United States v. Williams, 668 F.2d 1064, 1072 (9th Cir. 1981) ("Where, however, the trial judge relies on materially false or unreliable information, there is a violation of defendant's due process rights."); Moore v. United States, 571 F.2d 179, 183 n.7, 184 (3d Cir. 1978) ("In view of the due process limitation on the use by a sentencing judge of false information about a defendant, Moore maintains that he has a right to have his sentence vacated.").

The case law is sparse as to what constitutes a constitutional claim that cannot be waived. It seems, however, that the exception for non-waivable constitutional claims is subsumed by the miscarriage of justice exception to the enforceability of a waiver. See Gwinnett, 483 F.3d at 203 ("[A] sentence based on constitutionally impermissible criteria, such as race, or a sentence in excess of the statutory maximum sentence for the defendant's crime, can be challenged on appeal even if the defendant executed a blanket

waiver of his appeal rights." (quotation marks omitted)); United States v. Brown, 232 F.3d 399, 403 (4th Cir. 2000) (relating that a defendant may appeal a sentence despite a waiver of appeal if the sentence was "(1) imposed in excess of the maximum penalty provided by law or (2) based on a constitutionally impermissible factor such as race.").

We conclude that no miscarriage of justice would result from enforcement of the waiver because Ladner's due process claim is meritless. See Khattak, 273 F.3d at 562. Congress has provided that:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

18 U.S.C. § 3661. Notwithstanding that broad latitude, the information relied upon at sentencing must have "'sufficient indicia of reliability to support its probable accuracy.'" United States v. Berry, 553 F.3d 273, 280 (3d Cir. 2009) (quoting United States v. Warren, 186 F.3d 358, 364-65 (3d Cir. 1999)). The Supreme Court has instructed that, generally, facts that are relied upon to increase a sentence must be proved by a preponderance of the evidence. United States v. Watts, 519 U.S. 148, 156 (1997).

Ladner argues that the District Court may have impermissibly considered the details of his alleged arrest in the Philippines as part of its decision to sentence him to the high end of the Sentencing Guidelines range, and that such reliance was a due process violation because the police report was uncorroborated and unreliable. The record, however, demonstrates that the District Court did not consider the details of the police report in its sentencing decision. In response to Ladner's objection in the Pre-Sentence

7

Report, the District Court held that the Philippine police report was relevant because it demonstrated that Ladner had been apprehended in the Philippines rather than surrendering on his own. The Court concluded that Ladner's decision not to surrender "may be pertinent and relevant to consider imposing a sentence at the upper end of the guideline range or an upward guideline departure or a variance upwards from the guidelines." Appendix ("App.") 38. The Court asserted that it would "give this information some probative value, some relevance. I acknowledge that it has a certain danger of unfair prejudice. I don't think it presents a danger of unfair prejudice, because I'm not going to be inflamed by it and I'm not." App. 41.

The Court then delivered a detailed explanation for its sentence. In particular, the Court explained that the sentence was appropriate in light of Ladner's violent criminal history that was not taken into account by the Sentencing Guidelines because his prior convictions for manslaughter, assault, and weapons violations were too old to affect his criminal history category. The Court also asserted that the sentence reflected the seriousness of the offense, would have the appropriate deterrence effect on possible future offenders, and would provide Ladner with "needed educational or vocational training, medical care or other correctional treatment in the most effective manner." SA 121. The Court referenced Ladner's arrest in the Philippines only once, saying: "The defendant was a fugitive for almost four years. He appears to have done nothing [productive] with his time in [the] Philippines and [the] details surrounding his capture are sordid." SA 117.

8

It is manifest that the District Court did not factor the lurid details of Ladner's Philippines arrest into its sentencing decision. To the contrary, the Court explicitly stated that the police report was probative only to show that Ladner had not voluntarily surrendered himself. Thus, this case is distinguishable from the case Ladner relies upon, United States v. Berry, 553 F.3d 273. In Berry, the District Court opined that the defendants' criminal history points did not adequately reflect their criminal history because of prior arrests that had not resulted in prosecutions. Id. at 279. Unlike in this case, the District Court in Berry expressly stated that it was considering the arrests in its sentencing determination.

In the absence of any indication in the record that the District Court relied on the uncorroborated details of the Philippine police report at sentencing, we hold that Ladner's due process argument lacks merit. Therefore, based on the factors set forth in Khattak, enforcement of the waiver in Ladner's plea agreement will not result in a miscarriage of justice.

III.

Having concluded that Ladner's waiver of the right to appeal is enforceable and that Ladner's claim falls within the scope of the waiver, we will affirm the judgment and sentence of the District Court.

9